**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Benjamin Levine (SBN 342060)
blevine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Fax: (818) 347-4118

**LESSEM NEWSTAT & TOOSON, LLP**
Jamal Tooson (SBN 261373)
Jtooson@LNlegal.com
3450 Cahuenga Blvd. West, Suite 102
Los Angeles, CA 90068
Phone: (818) 582-3087

**AVJUSTICE LAW FIRM**
Antonio Villegas (SBN 241944)
antonio@avjustice.com
591 Plaza Drive
West Covina, CA 91790
Phone: (323) 744-1671

***Attorneys for Plaintiff***

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JESUS GOMEZ ISLAS,

Plaintiff,

v.

CITY OF LOS ANGELES; COUNTY OF LOS ANGELES; STATE OF CALIFORNIA; and DOES 1 through 10, inclusive,

Defendants.

**Case No.: 2:26-cv-13204**

**COMPLAINT FOR DAMAGES**

1. Fourth Amendment, Excessive Force (42 U.S.C. § 1983)
2. Fourth Amendment, Denial of Medical Care (42 U.S.C. § 1983)
3. First Amendment, Retaliation (42 U.S.C. § 1983)
4. Fourteenth Amendment, Substantive Due Process (42 U.S.C. § 1983)
5. Municipal Liability, Unconstitutional Custom, Policy, or Practice (42 U.S.C. § 1983)
6. Municipal Liability, Failure to Train (42 U.S.C. § 1983)
7. Municipal Liability, Ratification (42 U.S.C. § 1983)
8. Battery

9. Negligence
10. Violation of Bane Act (Civil Code § 52.1)
11. Violation of Ralph Act (Civil Code § 51.7)

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

1. This civil rights and state tort action arises from the unjustified use of force by Defendants, police officers for one or more of the City of Los Angeles, the County of Los Angeles, and the State of California, against Plaintiff Jesus Gomez Islas. On January 31, 2026, one or more police officers fired one or more "less-lethal" impact round from a launcher at Plaintiff, striking him in the eye and destroying his eye, for no legitimate reason, while he was unarmed and posed no threat to anyone.

2. Through this action, Plaintiff seeks compensatory and punitive damages from Defendants for their violations of Plaintiff's rights and seeks to hold Defendants accountable for same.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to this action occurred in this district and because, on information and belief, all Defendants reside in this district.

## PARTIES

5. Plaintiff JESUS GOMEZ ISLAS is an individual residing in Los Angeles, California. Plaintiff seeks all available damages under federal and state law, including compensatory damages.

6. At all relevant times, Defendant COUNTY OF LOS ANGELES ("COUNTY") is and was a municipal corporation existing under the laws of the State of California. COUNTY is a chartered subdivision of the State of California with the capacity to be sued. COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Los Angeles County Sheriff's Department ("LASD") and its agents and employees. At all relevant times, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the LASD and its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, COUNTY was the employer of one or more of Defendants DOES 1-10.

7. At all relevant times, Defendant CITY OF LOS ANGELES ("CITY") is and was a political subdivision of the State of California that is within this judicial district. Defendant CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Los Angeles Police Department ("LAPD") and its agents and employees. At all relevant times, Defendant CITY was responsible for assuring those actions, omissions, policies, procedures, practices, and customs of the Defendant CITY, LAPD, and its employees and agents complied with the laws of the United States and the State of California. At all relevant times, Defendant CITY was the employer of one or more of Defendants DOES 1-10.

8. At all relevant times, Defendant STATE OF CALIFORNIA ("STATE") is and was a duly organized public entity existing under the laws of the State of California. STATE is and was responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and agencies, including the California Highway Patrol ("CHP") and its agents and employees. At all relevant times, Defendant STATE is and was responsible for the management and overseeing of the CHP and for the policies, practices, and/or customs relating

to the CHP and its officers. At all relevant times, Defendant STATE was the employer of one or more of Defendants DOES 1-10.

9. Defendant Officer DOES 1-10 are police officers for the CITY, COUNTY, and/or STATE ("DOE OFFICERS"). At all relevant times, DOE OFFICERS were acting under color of law within the course and scope of their employment as officers for Defendants CITY, COUNTY, and/or STATE, by and through their respective law enforcement agencies, the LAPD, LASD, and CHP, and were acting with complete authority and ratification of their principal. On information and belief, DOE OFFICERS were residents of the County of Los Angeles at all relevant times. DOE OFFICERS are sued in their individual capacities.

10. In doing the acts, failings, and/or omissions as hereinafter described, Defendants DOE OFFICERS were acting on the implied and actual permission and consent of Defendant CITY, COUNTY, and/or STATE.

11. The true names and capacities, whether individual, corporate, association or otherwise of Defendant DOES 1-10, inclusive, are unknown to Plaintiff, who otherwise sues these Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to show the true names and capacities of these Defendants when they have been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

12. At all times mentioned herein, each and every Defendant, including DOES 1-10, was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every Defendant.

13. All of the acts complained of herein by Plaintiff against Defendants, including DOES 1-10, were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all

relevant times herein were acting with the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts complained herein.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

14. On January 31, 2026, at approximately 9:40 p.m., while on his way home after getting off work, Plaintiff was peacefully present at a public demonstration at the Metropolitan Detention Center near the downtown area of Los Angeles, California.

15. On information and belief, LAPD officers, LASD deputies, and CHP officers were deployed at and around the Metropolitan Detention Center that night, formed skirmish lines facing the demonstrators, and were equipped with less-lethal projectile round launchers.

16. Within minutes after arriving, Plaintiff was struck in his eye with one or more “less-lethal” projectile rounds fired by DOE OFFICERS, which destroyed his eye.

17. An impact round fired from a less-lethal launcher that strikes a person in the face or eye is capable of causing, and here did cause, serious bodily injury. On information and belief, DOE OFFICERS fired at Plaintiff’s head and face, or fired in a manner they knew created a substantial risk of striking his head and face. Firing such a round at a person’s head constitutes deadly force under California law.

18. At this time, Plaintiff was on his scooter and was positioned directly next to a member of the media who had prominently displayed “MEDIA” credentials in plain view.

19. Plaintiff did nothing to draw DOE OFFICERS’ fire. On information and belief, DOE OFFICERS either deliberately targeted Plaintiff, or fired indiscriminately into the area where Plaintiff stood.

20. At the time DOE OFFICERS fired, Plaintiff was unarmed, was not approaching officers, posed no threat of harm whatsoever to DOE OFFICERS or anyone else, and had not been given any warning that force would be used against him.

21. Despite witnessing this patently unjustified use of force against a nonthreatening civilian, no other officer intervened.

22. After Plaintiff was struck in the eye by one or more less-lethal rounds fired by DOE OFFICERS, no officer provided or secured, or made any attempt to provide or secure, medical attention to Plaintiff. Instead, DOE OFFICERS continued deploying projectiles.

23. As DOE OFFICERS continued deploying projectiles, Plaintiff was assisted away from the area by others and transported to a hospital for medical treatment.

24. As a result of Defendants' conduct, Plaintiff suffered the destruction of his eye, permanent disfigurement, the loss of binocular vision, as well as significant physical pain and suffering, embarrassment, humiliation, extreme emotional distress, fear, isolation, medical expenses, loss of earnings, and past and future economic and non-economic losses.

25. Plaintiff is autistic, and his injuries have been especially devastating for him. The sudden, violent trauma of being shot in the face; the loss of his eye's function and of his depth perception; and the disruption of the routines and sensory stability on which he depends have caused Plaintiff heightened anxiety, fear, and emotional distress, and have made the process of adapting to his injuries far more difficult for him than it would be for a person without his condition.

26. On or around March 27, 2026, Plaintiff filed comprehensive and timely claims for damages with the City of Los Angeles pursuant to the applicable sections of the California Government Code. On May 18, 2026, the City of Los Angeles denied Plaintiff's claim by letter.

27. On or around March 23, 2026, Plaintiff filed comprehensive and timely claims for damages with the County of Los Angeles pursuant to the applicable sections of the California Government Code. On May 19, 2026, the County of Los Angeles denied Plaintiff's claim by letter. On July 27, 2026, Plaintiff filed supplemental claims for damages with the County of Los Angeles, which the County of Los Angeles also denied by letter on August 24, 2026.

28. On or around July 21, 2026, Plaintiff filed comprehensive and timely claims for damages with the State of California and California Highway Patrol pursuant to the applicable sections of the California Government Code. These claims were denied by operation of law on September 4, 2026. As of the date of the filing of this Complaint, Plaintiff has received no response to these claims.

## FIRST CLAIM FOR RELIEF

### Fourth Amendment—Excessive Force (42 U.S.C. § 1983)

### Plaintiff against Defendants DOES 1-10

29. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

30. At the time DOE OFFICERS used force against Plaintiff, Plaintiff had not committed any crime, did not pose any threat of harm to DOE OFFICERS or others, and was unarmed.

31. DOE OFFICERS seized Plaintiff within the meaning of the Fourth Amendment when they intentionally applied physical force to his body by firing one or more impact rounds that struck him, with the intent to stop, restrain, or control his movement.

32. DOE OFFICERS provided no verbal warning to Plaintiff that they would use force against him prior to firing less-lethal weapons at him.

33. DOE OFFICERS fired at Plaintiff's head and face, which constitutes deadly force, at a time when Plaintiff posed no immediate threat of death or serious

bodily injury to anyone. Even if some force had been warranted—and none was—firing a round into a person's eye was grossly disproportionate to any conceivable governmental interest.

34. The unreasonable use of force by DOE OFFICERS deprived Plaintiff of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

35. As a result, Plaintiff suffered extreme pain and suffering and injury.

36. As a result of the conduct of Defendants DOE OFFICERS, they are liable for Plaintiff's injuries because they were integral participants in the use of excessive force, or because they failed to intervene to prevent it despite a realistic opportunity to do so.

37. As a result of the violation of Plaintiff's Fourth Amendment rights, Defendants DOE OFFICERS are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, emotional distress, medical expenses, loss of earnings, and past and future economic and non-economic losses.

38. The conduct of Defendants DOE OFFICERS was willful, wanton, malicious, and done with reckless disregard for the rights of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to these defendants.

39. Plaintiff also seeks attorney's fees and costs under this claim.

## SECOND CLAIM FOR RELIEF

### Fourth Amendment—Denial of Medical Care (42 U.S.C. § 1983)

### Plaintiff against Defendants DOES 1-10

40. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

41. After shooting Plaintiff with less-lethal projectiles, clearly injuring him, none of Defendants DOE OFFICERS provided, attempted to provide, or took any steps to secure the provision of needed medical care for Plaintiff.

42. The denial of medical care by Defendants deprived Plaintiff of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

43. As a result, Plaintiff suffered significant mental and physical pain, and injury, exacerbated as a result of the failure to provide medical care.

44. The conduct of Defendants DOE OFFICERS was willful, wanton, malicious, and done with reckless disregard for the rights of Plaintiff therefore warrants the imposition of exemplary and punitive damages as to these defendants.

45. As a result of the violation of Plaintiff's Fourth Amendment rights, Defendants DOE OFFICERS are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, emotional distress, medical expenses, loss of earnings, and past and future economic and non-economic losses.

46. Plaintiff also seeks attorney's fees and costs under this claim.

## THIRD CLAIM FOR RELIEF

**First Amendment—Retaliation (42 U.S.C. § 1983)**

**Plaintiff against Defendants DOES 1-10**

47. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

48. Peaceably assembling for public protest is protected conduct under the First Amendment to the United States Constitution.

49. Plaintiff's peaceful presence at the demonstration at the Metropolitan Detention Center, including beside a credentialed journalist documenting law enforcement's response to that demonstration, was protected by the First Amendment.

50. On information and belief, Defendants DOE OFFICERS fired one or more less-lethal projectile rounds at Plaintiff because of, and in retaliation for, their belief that he was participating, or had previously participated, in First Amendment–protected protest against federal immigration enforcement practices or other government policies or practices, as extrajudicial punishment for such assumed protest.

51. The retaliatory uses of force against Plaintiff, in particular shooting him with less lethal projectile rounds, would chill a person of ordinary firmness from continuing to exercise his free speech and/or free assembly rights.

52. Plaintiff's First Amendment–protected activity was a substantial or motivating factor in Defendants DOE OFFICERS' conduct.

53. As a result of Defendants DOE OFFICERS' retaliatory use of force against Plaintiff, Plaintiff suffered extreme pain and suffering and injury.

54. As a result of the conduct of Defendants DOE OFFICERS, they are liable for Plaintiff's injuries because they were integral participants in the retaliatory use of force.

55. As a result of the violation of Plaintiff's First Amendment rights, Defendants DOE OFFICERS are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, emotional distress, medical expenses, loss of earnings, and past and future economic and non-economic losses.

56. The conduct of Defendants DOE OFFICERS was willful, wanton, malicious, and done with reckless disregard for the rights of Plaintiff therefore warrants the imposition of exemplary and punitive damages as to these defendants.

57. Plaintiff also seeks attorney's fees and costs under this claim.

## FOURTH CLAIM FOR RELIEF

### Fourteenth Amendment—Substantive Due Process (42 U.S.C. § 1983)

### Plaintiff against Defendants DOES 1-10

58. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

59. This claim is pleaded in the alternative to Plaintiff's First Claim for Relief, to the extent the force used against Plaintiff is found not to constitute a seizure under the Fourth Amendment.

60. The Due Process Clause of the Fourteenth Amendment protects individuals from arbitrary and conscience-shocking uses of force by government officials, and secures Plaintiff's liberty interest in his bodily integrity.

61. DOE OFFICERS fired one or more less-lethal rounds at Plaintiff's head and face, without warning and without any legitimate law enforcement objective, at a time when Plaintiff was unarmed, was not approaching officers, and posed no threat to anyone. On information and belief, DOE OFFICERS were not responding to any emergency or rapidly evolving threat, and had time to deliberate before firing.

62. DOE OFFICERS acted with deliberate indifference to Plaintiff's safety and, on information and belief, with a purpose to harm Plaintiff unrelated to any legitimate law enforcement objective, including to punish him for his perceived participation in a protest relating to federal immigration enforcement. Their conduct shocks the conscience.

63. As a result of the conduct of Defendants DOE OFFICERS, they are liable for Plaintiff's injuries, either because they were integral participants in the use of force, or because they failed to intervene to prevent it despite a realistic opportunity to do so.

64. As a result of the violation of Plaintiff's Fourteenth Amendment rights, Defendants DOE OFFICERS are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, emotional distress, medical expenses, loss of earnings, and past and future economic and non-economic losses.

65. The conduct of Defendants DOE OFFICERS was willful, wanton, malicious, and done with reckless disregard for the rights of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to these defendants.

66. Plaintiff also seeks attorney's fees and costs under this claim.

## FIFTH CLAIM FOR RELIEF

**Municipal Liability—Unconstitutional Custom, Policy, or Practice**

**(42 U.S.C. § 1983)**

**Plaintiff against Defendants CITY and COUNTY**

67. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

68. The actions of Defendants DOE OFFICERS, which deprived Plaintiff of his constitutional rights under the First and Fourth Amendments as alleged herein, were carried out in accordance with a widespread and longstanding practice or custom of Defendants CITY and COUNTY. This custom condones, ratifies, and acquiesces in the use of excessive force by law enforcement officers, particularly through wanton and indiscriminate use of less-lethal projectile weapons against individuals peaceably and lawfully exercising their First Amendment rights, or

otherwise present, at or near public protests. Additionally, as a result of this ingrained practice, on information and belief, Defendants DOE OFFICERS have not been disciplined, reprimanded, retrained, suspended, or faced any administrative or adverse employment consequences in connection with Plaintiff's injuries. This unlawful practice or custom by Defendants CITY and COUNTY was the moving force behind the deprivations of Plaintiff's constitutional rights alleged herein.

69. Defendants CITY and COUNTY, including through their final policymakers and supervisors, maintained the following unconstitutional customs, practices, and/or unwritten policies:

a. The excessive and wanton use of less-lethal projectile weapons by officers against individuals perceived to be involved in or associated with public protest and/or assembly, regardless of whether or not such individuals reasonably appear to pose any threat of harm to officers or any other person, and regardless of whether or not such individuals violate any law or order.

b. The use of excessive force by officers when there is no need to use force, including when there is no apparent immediate threat of harm to officers or the public.

c. The failure to provide adequate training to officers regarding the use of force, including training on fundamental constitutional limits on use of force, including regarding the use of less-lethal projectile weapons in the context of public protests and/or assemblies.

d. The employing and retaining as law enforcement officers individuals whom the CITY and COUNTY knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force.

e. The inadequate supervising, training, controlling, assigning, and disciplining of police officers, contributing to situations like that encountered during the subject incident, where lack of proper direction and control led to the escalation of a situation involving an individual who was peacefully present at a public demonstration on his way home from work and posed no threat to anyone.

f. The maintenance of grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by law enforcement officers, as demonstrated by the subject incident, where DOE OFFICERS used force against an individual who posed no threat to the officers and had committed no crime.

g. The custom and practice of concluding that acts of excessive use of force are "within policy" including use of less-lethal force instances such as that used in the subject incident.

h. Even when an incident such as the subject incident is brought to light, where the use of force was patently excessive and unreasonable, the refusal to discipline, terminate, or retrain the law enforcement officers involved.

i. The custom and practice of accommodating, or facilitating a "code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes, as indicated by the lack of immediate corrective actions or reporting regarding the subject incident, and by the other present officers' failure to intervene.

j. The maintenance of a policy of inaction and an attitude of indifference towards soaring numbers of instances of excessive force by police officers, as evidenced by the subject incident, where a lack of discipline, retraining, investigation, termination, and recommendation

for criminal prosecution perpetuates a cycle of violence in violation of individuals' constitutional rights.

k. The indiscriminate or deliberate inappropriate firing of less-lethal impact rounds at the head, face, and eyes of individuals at or near public demonstrations, in violation of California Penal Code section 13652 and, as to the CITY, in violation of a federal injunction expressly prohibiting such targeting.

70. Defendants CITY and COUNTY, by and through their final policymakers and officials, along with DOE OFFICERS, had actual or constructive knowledge of the unconstitutional policies, practices and customs alleged herein. Defendants CITY and COUNTY acted with deliberate indifference to the foreseeable effects and consequences of these customs and policies with respect to the constitutional rights of Plaintiff and other individuals similarly situated.

71. Examples of excessive, wanton, and indiscriminate use of less-lethal projectile weapons by LAPD officers against individuals exercising their First Amendment speech and/or assembly rights, regardless of any threat of harm posed by such individuals, abound in recent years. The following are only a few examples of such constitutional violations committed by LAPD officers working for Defendant CITY, demonstrating the existence of the practices, customs, and/or unwritten policies alleged herein, and CITY's deliberate indifference to same and to the resulting widespread violations of individuals' constitutional rights.

a. In *Black Lives Matter Los Angeles v. City of Los Angeles*, et al., No. CV 20-5027 CBM (ASx) (C.D. Cal.), LAPD officers used projectiles and baton strikes to disperse or control protestors in the wake of the death of George Floyd. The district court there ordered a preliminary injunction that: only LAPD officers who successfully completed training and meet all annual qualification requirements may use the 40mm and 37mm projectile launchers in public demonstrations; an

officer may only use 40mm less-lethal munitions when the officer reasonably believes that a suspect is violently resisting arrest or poses an immediate threat of violence or physical harm, and a warning is given if feasible; an officer may use 37mm less-lethal munitions as a crowd control tool with the prior approval of the incident commander and only when a dispersal order has been issued, unless immediate action is necessary to stop violence, to ensure public safety and restore order; the 40mm launcher must not be used to target the head, neck, face, eyes, kidneys, chest, groin or spine of a person; and the 40mm and 37mm launchers should only be fired at a distance of 5 feet or greater from another person, unless an officer or other person is attacked and there is a threat of imminent or serious harm. 2022 WL 16888576 (C.D. Cal. Oct. 3, 2022), *vacated in part on other grounds*, 113 F.4th 1249 (9th Cir. 2024).

(a) In January 2026, following LAPD's continued wanton use of less-lethal projectile weapons during protests in the summer of 2025, the court held Defendant CITY and its LAPD in civil contempt of its earlier injunction as a result of CITY's failure to take measures to ensure compliance with the injunction and to prevent the wanton use of less-lethal projectiles prohibited by the injunction. *Black Lives Matter Los Angeles v. City of Los Angeles*, 2026 WL 414801, at *2-3 (C.D. Cal. Jan. 15, 2026). That contempt order issued on January 15, 2026—just sixteen days before DOE OFFICERS shot Plaintiff in the eye with a less-lethal projectile at a public demonstration in downtown Los Angeles. The CITY was thus on actual, judicially adjudicated notice of this precise practice, and of the grave

risk of injury it posed, immediately before Plaintiff was harmed, yet failed to take the measures necessary to stop it.

(b) In its January 2026 order, the district court cited the following specific examples of LAPD's wanton or retaliatory use of less-lethal force against protestors in the summer of 2025 identified by the class plaintiffs:

"• LAPD Officer Orozco (identified in a New York Times video report) shot Atlachinolli Tezcacoatl twice while he had his hands up and was filming police with his phone. Officer Orozco then shot Mr. Tezcacoatl in the face, requiring surgery to repair his jaw.

"• LAPD Officer shot Kelsey McMurtry while crouched behind a folding chair by a 40mm less-lethal weapon. She was then struck by another officer with a 40mm LLM while on the ground, and then shot a third time in in [sic] the back. Plaintiffs allege mounted officers then trampled her as they advanced against the protestors.

"• LAPD officers shot Kathryn Luksus in the head while she was sitting down and holding a sign.

"• LAPD officers shot Jason Reedy in the groin with a 40mm KIP while he was on the sidewalk with his hand sup [sic] in the air.

"• In response to the shooting of Mr. Reedy, Shakeer Rahman, counsel of record, asked the officer for his name and serial number pursuant to Cal. Penal Code § 830.10. Id. The officer then shot Mr. Rahman twice in the groin for "taking [the officer's] focus."

"• LAPD shot Chad Ashby in the back of the head with a KIP while Mr. Ashby was trying to leave the protest.

"• While treating bloody wounds of protestors, LAPD officers shot registered nurse Christopher Fernandez with a 40mm LLM, while he was wearing a white cross on his clothing to indicant [sic] medical treatment.

"• Without warning of intention to shoot with a less lethal weapon, LAPD shot Jack Kearns in the back of his head with a 40mm."

*Id.* at *2 (internal citations omitted).

b. On May 29, 2020, Asim Jamal Shakir Jr. was shot twice with a less-lethal projectile launcher while protesting in the wake of the death of George Floyd. Shakir suffered wounds to his right hand and burns requiring medical treatment, as well as a wound and bruising on his buttocks. On August 25, 2023, a jury awarded Shakir $3,750,000 in damages. (*Shakir v. City of Los Angeles, et al.*, No. 21STCV17510.)

c. On May 30, 2020, an LAPD officer shot a less-lethal projectile into a crowd of protestors and hit Deon Jones in the face, fracturing his jaw. In March 2023, a jury found the officer liable for Jones's injuries and awarded Jones $375,000. (*Jones v. City of Los Angeles, et al.*, No. 2:20-cv-11147-FWS-SK.)

d. On June 2, 2020, an LAPD officer shot a man in the groin with a less-lethal projectile round during a George Floyd demonstration, rupturing the man's testicle. In May 2024, the CITY settled the man's case for $1,500,000. (*Montemayor v. City of Los Angeles, et al.*, No. 2:21-cv-03124-CBM-(ASx).)

e. On May 30, 2020, an LAPD officer shot Marine-veteran and protester C.J. Montano multiple times with less lethal rounds, including

shooting at Montano's head. Montano had his hands up before being shot. Montano suffered brain bleeding and had to spend time in the ICU. The CITY settled the lawsuit for $1,250,000. (*Montano v. City of Los Angeles, et al.*, No. CV 20-07241-CBM (ASx)).

f. On June 6, 2025, media from around the world arrived in Los Angeles to cover the protests against the federal government's immigration raids. Throughout the protests, members of the media were prevented from entering protest areas where they were lawfully permitted, and were detained, arrested, and met with an onslaught of less-lethal munitions and other shows of physical force, in flagrant violation of their First Amendment rights. On June 16, 2025, a journalist support organization with roughly 1,000 members filed a lawsuit against the CITY for these and other violations that occurred during these protests. On July 10, 2025, the court ordered a temporary restraining order to, among other things, enjoin the CITY and its LAPD from using less-lethal munitions and other crowd control weapons (including kinetic impact projectiles, chemical irritants, and flash-bangs) against journalists who are not posing a threat of imminent harm to an officer or another person, enjoin the CITY and its LAPD from aiming kinetic energy projectiles at the head, neck, back, or any other vital organs, and enjoin the CITY and its LAPD from using kinetic energy projectiles or chemical agents in response to a curfew violation, a verbal threat, or noncompliance with a law enforcement directive. *Los Angeles Press Club v. City of Los Angeles*, No. 2:25-cv-05423-HDV-E, 790 F.Supp.3d 838 (C.D. Cal. July 10, 2025).

(a) Two months later, the court issued a similar preliminary injunction. *Los Angeles Press Club v. City of Los Angeles*, No. 2:25-cv-05423-HDV-E, 799 F.Supp.3d 1007 (C.D.

Cal. Sept. 10, 2025). In granting the preliminary injunction—referencing the CITY and LAPD's long-standing pattern and practice of wantonly using less-lethal weapons in the contexts of protests and other exercises of individuals' First Amendment rights dating back to at least 2007—the district court remarked, "It is déjà vu all over again." *Id.* at 1015.

g. In 2007, "the LAPD 'deployed a total of 146 less-lethal impact munitions and over 100 uses of the baton' against media and protestors, peaceful or not, at a May Day rally in MacArthur Park." *Id.* (quoting *Multi-Ethnic Immigr. Workers Org. Network v. City of Los Angeles*, 246 F.R.D. 621, 624 (C.D. Cal. 2007)). "In the aftermath, the LAPD acknowledged that the treatment of the media at the rally failed to comply with previous settlements." *Id.*

72. The COUNTY and its LASD have likewise long been on notice that LASD deputies fire less-lethal projectiles at the heads and faces of peaceful protesters and others who pose no threat to anyone. By way of example only:

h. On May 30, 2020, at or near the intersection of Beverly Boulevard and North Stanley Avenue in Los Angeles, LASD deputies fired tear gas and less-lethal projectiles, without warning, at peaceful protesters demonstrating against the death of George Floyd. Cellin Gluck—who was unarmed, holding only a camera, and posing no threat to anyone—was struck in the face by a less-lethal projectile fired by LASD deputies as he and his daughter stopped to check on another protester who had just been struck in the face by a bean bag round. The projectile traveled into Mr. Gluck's nasal cavity, where it remained lodged for almost a year until it was surgically removed. Mr. Gluck and his daughter sued the COUNTY, alleging, among other

things, that the COUNTY failed to train its deputies on the specific less-lethal projectiles they deployed against protesters and on the circumstances in which less-lethal force may be used against peaceful protesters. In August 2025, a jury awarded $3,800,000 in damages. (*Gluck v. County of Los Angeles*, Los Angeles Superior Court Case No. 21STCV24355.)

73. Despite that notice—and despite a $3,800,000 jury verdict against it less than six months before Plaintiff was shot—on information and belief, the COUNTY did not discipline the deputies involved and did not materially change its training, policies, or supervision regarding the use of less-lethal projectiles against individuals at public demonstrations. LASD deputies continued to deploy less-lethal projectiles against demonstrators in Los Angeles through 2025 and into 2026, including, on information and belief, at the demonstration where Plaintiff was shot.

74. The foregoing nonexhaustive list of examples establish a pattern of excessive use of force by Defendant CITY's LAPD officers and Defendant COUNTY's LASD deputies—specifically, the wanton and unjustified use of less-lethal projectile rounds against individuals exercising their First Amendment rights who pose no immediate threat of harm to anyone—and the CITY's and COUNTY's custom and practice of ratifying the excessive use of force by their officers and deputies, as evidenced by the number of prior cases involving the use of unreasonable force by officers working for the LAPD and LASD and the CITY's and COUNTY's retention of those officers and deputies.

75. Defendants CITY and COUNTY's longstanding practice or custom caused the deprivation of Plaintiff's rights by DOE OFFICERS; that is, Defendants CITY and COUNTY's custom, practice, or unwritten policy condoning excessive use of less-lethal weapons is so closely related to the deprivation of Plaintiff's rights in this case as to be the moving force that caused Plaintiff's injury.

76. Defendants CITY and COUNTY had either actual or constructive knowledge of the unconstitutional policies, practices and customs alleged herein.

77. Defendants CITY and COUNTY also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiff and other individuals similarly situated.

78. By reason of the aforementioned acts and omissions, Plaintiff has suffered significant physical and emotional pain and suffering.

79. As a result of the violation of Plaintiff's rights, Defendants CITY and COUNTY are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, emotional distress, medical expenses, loss of earnings, and past and future economic and non-economic losses.

80. Plaintiff also seeks attorney's fees and costs under this claim.

## SIXTH CLAIM FOR RELIEF

**Municipal Liability—Failure to Train (42 U.S.C. § 1983)**

**Plaintiff against Defendants CITY and COUNTY**

81. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

82. The training policies of Defendants CITY and COUNTY were not adequate to properly train their law enforcement officers to handle the usual and recurring situations in their interactions with residents, including interactions related to their response to peaceful protests and large assemblies. The training policies of Defendants CITY and COUNTY were not adequate to properly train their law enforcement officers with regard to the use of force, the permissible use of less-lethal weapons, and protecting individuals' First Amendment rights.

83. The unjustified and excessive use of force against Plaintiff by Defendants DOE OFFICERS was a result of the inadequate training by Defendants CITY and COUNTY, which failed to train their law enforcement officers, such as DOE OFFICERS, as to proper police tactics, proper use of force, proper use of less-lethal weapons, and proper police tactics in the use of force. Defendants CITY and COUNTY were responsible for the training of LAPD officers and LASD deputies to ensure that the actions, procedures, and practices of DOE OFFICERS, complied with Peace Officer Standards and Training ("POST") training standards regarding these subjects, and complied with applicable injunctions and other court orders.

84. Defendants CITY and COUNTY failed to train CITY and COUNTY law enforcement officers, such as Defendants DOE OFFICERS, to comply with POST training standards regarding proper police tactics, proper use of force, and proper police tactics when dealing with individuals participating in or perceived to have a connection to protests. POST was established by the California Legislature in 1959 to set minimum training standards for California police officers. The training policies of Defendants CITY and COUNTY were not adequate to train its police officers to handle the usual and recurring situations with individuals with whom its officers, including DOE OFFICERS, have contact.

85. The training policies of Defendants CITY and COUNTY were deficient in the following ways:

a. Defendants CITY and COUNTY failed to adequately train their law enforcement officers, such as DOE OFFICERS, in responding to protests and interacting with individuals who are participating, or may have some connection to, protests.

b. Defendants CITY and COUNTY failed to adequately train their law enforcement officers, such as DOE OFFICERS, regarding fundamental legal requirements governing officers' use of less-lethal

weapons, including projectile rounds, against individuals exercising their First Amendment rights and others, including by failing to train officers that they may not fire direct impact weapons at individuals who pose no apparent threat merely because officers desire that the individuals leave or disperse, whether or not a proper dispersal order has been issued.

c. Defendants CITY and COUNTY failed to properly train their law enforcement officers, such as DOE OFFICERS, to manage their fear to prevent it from becoming unreasonable and not objectively justifiable, including in the context of protests or other First Amendment–protected public activity.

d. Defendants CITY and COUNTY failed to properly train their law enforcement officers, such as DOE OFFICERS, on the importance of effective communication between officers prior to using any type of force, and on the necessity of issuing verbal warnings that force will be used against individuals prior to using such force against them when such warnings are feasible.

e. Defendants CITY and COUNTY failed to adequately train their law enforcement officers, such as DOE OFFICERS, on the specific less-lethal munitions and launchers they deploy at public demonstrations, on the prohibition against firing such munitions at the head, face, and eyes, and on the restrictions imposed by California Penal Code section 13652—despite prior notice, including through the *Gluck* lawsuit against the COUNTY and the resulting $3,800,000 jury verdict, and the *Black Lives Matter Los Angeles* injunction and contempt proceedings against the CITY, that their officers were firing such munitions at the heads and faces of individuals who posed no threat.

86. The failure of Defendants CITY and COUNTY to provide proper training to their law enforcement officers resulted in the deprivation of Plaintiff's rights by Defendants DOE OFFICERS as alleged herein. Defendants CITY and COUNTY's failure to train is so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injuries to Plaintiff.

87. The training policies of Defendants CITY and COUNTY were not adequate to train their law enforcement officers to handle the usual and recurring situations they must deal with, including situations involving or relating to peaceful protests and individuals who attend them. Defendants CITY and COUNTY were deliberately indifferent to the obvious consequences of its failure to properly train its police officers.

88. Defendants CITY and COUNTY had either actual or constructive knowledge of the failures to train alleged herein.

89. Defendants CITY and COUNTY also acted with deliberate indifference to the foreseeable effects and consequences of their failures to train with respect to the constitutional rights of Plaintiff and other individuals similarly situated.

90. By reason of the aforementioned acts and omissions, Plaintiff has suffered significant physical and emotional pain and suffering.

91. As a result of the violation of Plaintiff's rights, Defendants CITY and COUNTY are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, emotional distress, medical expenses, loss of earnings, and past and future economic and non-economic losses.

92. Plaintiff also seeks attorney's fees and costs under this claim.

## SEVENTH CLAIM FOR RELIEF

**Municipal Liability—Ratification (42 U.S.C. § 1983)**

**Plaintiff against Defendants CITY and COUNTY**

93. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

94. The acts of Defendants DOE OFFICERS deprived Plaintiff of his particular rights under the United States Constitution, including when DOE OFFICERS used excessive force against Plaintiff by intentionally shooting him with less-lethal projectile rounds.

95. On information and belief, one or more officials for Defendants CITY and COUNTY with final policymaking authority concerning the acts of Defendants DOE OFFICERS ratified the acts and omissions of Defendants DOE OFFICERS and the bases for them, specifically approving the use of excessive and unreasonable force against Plaintiff when he was not an immediate threat to any person and had not committed any crime.

96. Defendants CITY and COUNTY's improper ratification of the unconstitutional use of force against Plaintiff amounts to deliberate indifference to the violation of Plaintiff's constitutional rights as alleged herein, and to the foreseeable future violations of similarly situated individuals that will result from CITY and COUNTY's endorsement of the unconstitutional use of force against Plaintiff during the subject incident.

97. Defendants CITY and COUNTY's ratification of the unconstitutional use of force against Plaintiff, by and through their officials possessing relevant final policymaking authority, amounts to adoption of Defendants DOE OFFICERS' unconstitutional conduct by Defendants CITY and COUNTY themselves, such that Defendants CITY and COUNTY can be fairly said to have themselves caused the constitutional violations alleged.

98. By reason of the aforementioned acts and omissions, Plaintiff has suffered significant physical and emotional pain and suffering.

99. As a result of the violation of Plaintiff's rights, Defendants CITY and COUNTY are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, emotional distress, medical expenses, loss of earnings, and past and future economic and non-economic losses.

100. Plaintiff also seeks attorney's fees and costs under this claim.

## EIGHTH CLAIM FOR RELIEF

### Battery

### Plaintiff against all Defendants

101. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

102. Defendants DOE OFFICERS, while working as law enforcement officers for Defendants CITY, COUNTY, and STATE, and acting within the course and scope of their duties, intentionally shot Plaintiff with less-lethal projectile weapons, severely injuring him.

103. Defendants DOE OFFICERS had no privilege or legal justification for using such force against Plaintiff, making the use of force unreasonable under the circumstances. At all relevant times, Plaintiff did not pose a threat to anyone, including DOE OFFICERS, and was not committing a crime.

104. No warning was given that force would be used prior to its use against Plaintiff, even though a warning was feasible, given that Plaintiff was not approaching Defendants DOE OFFICERS or others when DOE OFFICERS fired, Plaintiff was not committing a crime, and Plaintiff did not otherwise reasonably appear to pose an immediate threat of harm to anyone.

105. By reason of the aforementioned acts and omissions of Defendants DOE OFFICERS, Plaintiff has suffered significant pain and suffering, emotional distress, embarrassment, and humiliation.

106. Defendants CITY, COUNTY, and STATE are vicariously liable for the wrongful acts of Defendants DOE OFFICERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

107. The conduct of Defendants DOE OFFICERS was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiff, entitling him to an award of exemplary and punitive damages.

108. As a result of their violation of Plaintiff's rights, Defendants are liable to Plaintiff for compensatory damages under California law, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, emotional distress, medical expenses, loss of earnings, and past and future economic and non-economic losses.

## NINTH CLAIM FOR RELIEF

### Negligence

### Plaintiff against all Defendants

109. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

110. Law enforcement officers, including Defendants DOE OFFICERS, have a duty to use reasonable care to prevent harm and injury to others, including members of the public such as Plaintiff. This duty includes giving appropriate commands, allowing reasonable time to comply with such commands where feasible, using reasonable de-escalation techniques prior to using force, refraining

from using unreasonable or excessive force, and making reasonable efforts to provide or secure the provision of timely medical care to individuals they have harmed.

111. The standard of care governing DOE OFFICERS' conduct is informed by, among other things, California Penal Code section 13652, which prohibits the use of kinetic energy projectiles to disperse any assembly, protest, or demonstration except in compliance with its requirements; permits their use only to defend against a threat to life or serious bodily injury, or to bring an objectively dangerous and unlawful situation under control; requires de-escalation, audible warnings, and an objectively reasonable effort to distinguish individuals engaged in violent acts from those who are not; prohibits aiming such projectiles indiscriminately into a crowd or at the head, neck, or vital organs; and requires that medical assistance be promptly provided to anyone injured. The standard of care is further informed by California Penal Code section 835a, which limits the use of deadly force. DOE OFFICERS violated each of these statutes, which were enacted to protect persons in Plaintiff's position from the very injury he suffered, giving rise to a presumption of negligence under California Evidence Code section 669.

112. Defendants DOE OFFICERS negligently injured Plaintiff when they fired less-lethal projectile weapons at him, causing him injuries. Their use of force was excessive, unreasonable, and negligent, including by virtue of their failure to first warn Plaintiff that force would be used, despite such warning being feasible, and by virtue of their pre-shooting conduct and post-shooting failure to provide or summon medical care.

113. In the alternative, and to the extent DOE OFFICERS did not intend to strike Plaintiff, DOE OFFICERS were negligent in that they: (a) fired at or toward the credentialed journalist standing beside Plaintiff, or at another person near Plaintiff, and struck Plaintiff instead, without exercising reasonable care to ensure that only a lawful target would be struck and that no bystander would be hit, and/or

fired less-lethal munitions indiscriminately into the area Plaintiff occupied without identifying any lawful target; (b) negligently aimed, handled, or discharged their launchers, including by aiming at or near head height, such that a round struck Plaintiff in the eye; (c) negligently failed to observe and account for Plaintiff's presence and position before firing; and (d) negligently failed to provide or summon medical aid after Plaintiff was struck.

114. Plaintiff pleads these negligence theories in the alternative to his intentional tort and civil rights claims, as permitted by Federal Rule of Civil Procedure 8(d)(2)-(3).

115. Through these acts and omissions, Defendants DOE OFFICERS breached their duty of care to Plaintiff.

116. By reason of the aforementioned acts and omissions of Defendants DOE OFFICERS, Plaintiff has suffered significant pain and suffering, severe emotional distress, embarrassment, and humiliation.

117. Defendants CITY, COUNTY, and STATE are vicariously liable for the wrongful acts of Defendants DOE OFFICERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

118. As a result of their violation of Plaintiff's rights, Defendants are liable to Plaintiff for compensatory damages under California law, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, emotional distress, medical expenses, loss of earnings, and past and future economic and non-economic losses.

**TENTH CLAIM FOR RELIEF**

**Violation of Bane Act (Cal. Civil Code § 52.1)**

**Plaintiff against all Defendants**

119. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

120. California Civil Code, Section 52.1 (the Bane Act), prohibits any person from interfering with another person's exercise or enjoyment of his constitutional rights by threats, intimidation, or coercion, including by the use of unconstitutionally excessive force.

121. The Bane Act, the California Constitution, and California common law prohibit the use of excessive force, interference with free speech and assembly rights, and denial of medical care by law enforcement. California Civil Code, Section 52.1(b) authorizes a private right of action for such claims.

122. Defendants DOE OFFICERS violated Plaintiff's constitutional rights by using unreasonable and excessive force against him, by forcibly retaliating against him for his perceived association with a public protest, and by denying him medical care after firing less-lethal impact rounds at him. All of these were done intentionally and with the specific intent to violate Plaintiff's constitutional rights, as demonstrated by Defendants' clear reckless indifference to such rights, and in retaliation for Plaintiff's exercise of his First Amendment rights.

123. DOE OFFICERS' conduct also violated California Penal Code sections 149, 242, and 13652, and Plaintiff's rights under Article I, sections 2, 3, 7, and 13 of the California Constitution, which protect his rights to free speech and assembly, to due process, and to be free from unreasonable seizures.

124. On information and belief, Defendants DOE OFFICERS intentionally and spitefully committed the above acts to discourage Plaintiff from exercising his civil rights.

125. Plaintiff reasonably believed that the violent acts committed by Defendants DOE OFFICERS were intended to discourage him from exercising his civil rights.

126. Defendants DOE OFFICERS successfully interfered with the civil rights of Plaintiff, including by depriving him of his right to be free from excessive force, and by chilling his future exercise of his First Amendment rights.

127. The conduct of Defendants DOE OFFICERS was a substantial factor in causing the harm, losses, injuries, and damages of Plaintiff.

128. By reason of the aforementioned acts and omissions of Defendants DOE OFFICERS, Plaintiff has suffered significant pain and suffering, emotional distress, embarrassment, and humiliation.

129. Defendants CITY, COUNTY, and STATE are vicariously liable for the wrongful acts of Defendants DOE OFFICERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

130. As a result of their violation of Plaintiff's rights, Defendants are liable to Plaintiff for compensatory damages under California law, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, emotional distress, medical expenses, loss of earnings, and past and future economic and non-economic losses.

131. Plaintiff also seeks attorneys' fees and costs under this claim.

/ / /

/ / /

## ELEVENTH CLAIM FOR RELIEF

**Violation of Ralph Civil Rights Act (Cal. Civil Code § 51.7)**

**Plaintiff against all Defendants**

132. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

133. California Civil Code section 51.7 (the Ralph Act) guarantees all persons the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or because another person perceives them to have a particular political affiliation.

134. DOE OFFICERS committed violence against Plaintiff by shooting him in the eye with a less-lethal round.

135. On information and belief, a substantial motivating reason for DOE OFFICERS' conduct was their perception of Plaintiff's political affiliation and viewpoint—namely, his perceived affiliation with and support for those protesting federal immigration enforcement at the Metropolitan Detention Center.

136. DOE OFFICERS' conduct was a substantial factor in causing Plaintiff's harm, including the destruction of his eye.

137. Defendants CITY, COUNTY, and STATE are vicariously liable for the wrongful acts of Defendants DOE OFFICERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

138. Pursuant to California Civil Code section 52(b), Plaintiff is entitled to actual damages, exemplary damages against the individual defendants, a civil penalty of $25,000 for each violation, and reasonable attorney's fees.

139. As a result of their violation of Plaintiff's rights, Defendants are liable to Plaintiff for compensatory damages under California law, including for past and

future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, emotional distress, medical expenses, loss of earnings, and past and future economic and non-economic losses.

140. Plaintiff also seeks attorneys' fees, a penalty, exemplary damages, and costs under this claim.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff JESUS GOMEZ ISLAS requests entry of judgment in his favor against Defendants CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, and DOES 1-10 as follows:

A. For compensatory damages under federal and state law, in an amount according to proof at trial;

B. For other general damages in an amount according to proof at trial;

C. For other non-economic damages in an amount according to proof at trial;

D. For other special damages in an amount according to proof at trial;

E. For punitive damages against the individual defendants in an amount to be proven at trial;

F. For a civil penalty of $25,000 for each violation pursuant to Cal. Civ. Code § 52(b)(2), and all other statutory damages available under Cal. Civ. Code §§ 52 and 52.1;

G. For reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and Cal. Civ. Code §§ 52(b)(3) and 52.1(h);

H. For costs of suit; and

I. For such other and further relief as the Court may deem just, proper, and appropriate.

DATED: November 11, 2026

**LAW OFFICES OF DALE K. GALIPO**
**LESSEM, NEWSTAT & TOOSON, LLP**
**AVJUSTICE LAW FIRM**

*/s/ Dale K. Galipo*

Dale K. Galipo
Benjamin S. Levine
Jamal Tooson
Antonio Villegas
*Attorneys for Plaintiff*

## **DEMAND FOR JURY TRIAL**

The Plaintiff named herein hereby demands a trial by jury.

DATED: November 11, 2026

**LAW OFFICES OF DALE K. GALIPO**
**LESSEM, NEWSTAT & TOOSON, LLP**
**AVJUSTICE LAW FIRM**

*/s/ Dale K. Galipo*
Dale K. Galipo
Benjamin S. Levine
Jamal Tooson
Antonio Villegas
*Attorneys for Plaintiff*